1

2

3

4

5

6

7

8                   IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MELINDA BOSWELL,                    No.  CIV.S-04-0785 DAD

12          Plaintiff,
                                         ORDER
13       v.

14   JO ANNE B. BARNHART,
     Commissioner of Social
15   Security,

16          Defendant.
     _____/
17

18          This social security action was submitted to the court,

19   without oral argument, for ruling on plaintiff's motion for summary

20   judgment and defendant's cross-motion for summary judgment.  For the

21   reasons explained below, the decision of the Commissioner of Social

22   Security ("Commissioner") is reversed and this matter is remanded

23   with the direction to grant benefits.

24                       **PROCEDURAL BACKGROUND**

25          This matter has a somewhat complex procedural background.

26   On September 11, 1996, plaintiff Melinda Boswell protectively filed

                                      1

1  for Supplemental Security Income ("SSI") under Title XVI of the

2  Social Security Act (the "Act").  (Transcript (Tr.) at 146-50.)  That

3  application was denied initially, upon reconsideration and in a

4  January 4, 1999, decision by an administrative law judge ("ALJ")

5  following a hearing.  (Tr. at 49-65, 369-86.)  On July 11, 2000, the

6  Appeals Council vacated the ALJ's decision and remanded the matter

7  for resolution of certain identified issues.  (Tr. at 335-37.)

8          On December 6, 2000, a second hearing was held and in a

9  decision issued on March 14, 2001, plaintiff again was found not

10  disabled.  (Tr. at 91-99, 387-412.)  In 2002, the Appeals Council

11  vacated that decision and for a second time remanded the matter for

12  further proceedings.  (Tr. at 66-68.)

13          In the meantime, in February, 2000, plaintiff had filed a

14  second application for SSI.  Plaintiff was found disabled with

15  respect to that application which was therefore granted.  However,

16  because of the timing of the second application the Appeals Council

17  found it to be a duplicate application.  Therefore, in its 2002

18  remand order referred to above the Appeals Council re-opened the

19  second application; consolidated it with plaintiff's first

20  application; and remanded both applications for further hearing.

21  (Id.)

22          A third administrative hearing took place before an ALJ on

23  November 12, 2002, at which time plaintiff was represented by

24  counsel.  (Tr. at 413-29.)  In a decision issued on January 13, 2003,

25  the ALJ again determined that plaintiff was not disabled.  (Tr. at

26  13-31.)  The ALJ entered the following findings in this regard:

1.   The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

2.   The claimant has an impairment or combination of impairments considered "severe" based on the requirements in the Regulations (20 CFR § 416.920(b)).

3.   These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

4.   The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

5.   The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR § 416.927).

6.   The claimant has the following residual functional capacity: unskilled light work involving working primarily with objects rather than people.

7.   The claimant is unable to perform any of her past relevant work (20 CFR § 416.965).

8.   The claimant is a "younger individual between the ages of 45 and 49" (20 CFR § 416.963).

9.   The claimant has "a limited education" (20 CFR § 416.964).

10.  Transferability of skills is not an issue in this case (20 CFR § 416.968).

11.  The claimant has the residual functional capacity to perform a significant range of light work (20 CFR § 416.967).

12.   Although the claimant's exertional limitations do not allow her to perform the full range of light work, using Medical Vocational Rule 202.18 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs include work as small parts assembler, packing line assembler, sewing machine operator, lamp shade assembler, almond blancher, and table worker (assembler).

13.   The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of the decision (20 CFR § 416.920(f)).

(Tr. at 30.)  The Appeals Council declined review of the ALJ's decision on February 10, 2004.  (Tr. at 7-10.)  Plaintiff then sought judicial review, pursuant to 42 U.S.C. § 405(g), by filing the complaint in this action on April 7, 2004.

**LEGAL STANDARD**

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence and the proper legal standards were applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).  The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive.  See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Morgan, 169 F.3d at 599; Jones v. Heckler, 760 F.2d 993,

/////

1  995 (9th Cir. 1985) (citing <u>Richardson v. Perales</u>, 402 U.S. 389, 401
2  (1971)).

3        A reviewing court must consider the record as a whole,
4  weighing both the evidence that supports and the evidence that
5  detracts from the ALJ's conclusion.  <u>See</u> <u>Jones</u>, 760 F.2d at 995.  The
6  court may not affirm the ALJ's decision simply by isolating a
7  specific quantum of supporting evidence.  <u>Id</u>.; <u>see</u> <u>also</u> <u>Hammock v.
8  Bowen</u>, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence
9  supports the administrative findings, or if there is conflicting
10 evidence supporting a finding of either disability or nondisability,
11 the finding of the ALJ is conclusive, <u>see</u> <u>Sprague v. Bowen</u>, 812 F.2d
12 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an
13 improper legal standard was applied in weighing the evidence, <u>see</u>
14 <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1338 (9th Cir. 1988).

15       In determining whether or not a claimant is disabled, the
16 ALJ should apply the five-step sequential evaluation process
17 established under Title 20 of the Code of Federal Regulations,
18 Sections 404.1520 and 416.920.  <u>See</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137,
19 140-42 (1987).  This five-step process can be summarized as follows:

20            Step one: Is the claimant engaging in substantial
             gainful activity?  If so, the claimant is found
21           not disabled.  If not, proceed to step two.

22            Step two: Does the claimant have a "severe"
             impairment?  If so, proceed to step three.  If
23           not, then a finding of not disabled is
             appropriate.
24

25 /////

26 /////

5

Step three: Does the claimant's impairment or
combination of impairments meet or equal an
impairment listed in 20 C.F.R., Pt. 404, Subpt.
P, App. 1?  If so, the claimant is conclusively
presumed disabled.  If not, proceed to step four.

Step four: Is the claimant capable of performing
his or her past work?  If so, the claimant is not
disabled.  If not, proceed to step five.

Step five: Does the claimant have the residual
functional capacity to perform any other work?
If so, the claimant is not disabled.  If not, the
claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).  The claimant

bears the burden of proof in the first four steps of the sequential

evaluation process.  Yuckert, 482 U.S. at 146 n.5.  The Commissioner

bears the burden if the sequential evaluation process proceeds to

step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir.

1999).

**APPLICATION**

Plaintiff advances three main arguments in her motion for

summary judgment.  First, plaintiff argues that substantial evidence

does not support the ALJ's residual functional capacity

determination.  Second, plaintiff asserts that the hypothetical

question posed by the ALJ to the vocational expert was flawed, the

ALJ having failed to incorporate all of plaintiff's limitations into

that hypothetical question.[1]  Third, plaintiff asserts that the ALJ

erred in discounting plaintiff's own testimony regarding the severity

---

[1]  The vocational testimony relied upon by the ALJ occurred at
the second administrative hearing.  The ALJ did not hear further
vocational expert testimony at the third hearing.

6

1  of plaintiff's symptoms and the resulting limitations those symptoms

2  place upon her.  The court addresses plaintiff's arguments below,

3  although not in the order plaintiff has presented them.

4          The court will initially take up plaintiff's first

5  argument.  The ALJ found plaintiff to have the residual functional

6  capacity to perform "unskilled light work involving working primarily

7  with objects rather than people."  (Tr. at 30.)  Thus, the ALJ found

8  plaintiff to have both physical (i.e., exertional) and mental (i.e.,

9  nonexertional) limitations.  The court agrees with plaintiff that the

10 ALJ's residual functional capacity assessment is not supported by

11 substantial evidence in the record.

12         The medical opinions in the administrative record

13 addressing plaintiff's physical ability to perform work are the

14 opinions of William K.Y. Chen, M.D. and David A. Padilla, M.D.,

15 plaintiff's treating physicians.  (Tr. at 297, 301-02, 307-08.)  It

16 is well-established that the medical opinion of a treating physician

17 is entitled to special weight.  See Fair v. Bowen, 885 F.2d 597, 604

18 (9th Cir. 1989); Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988).

19 "As a general rule, more weight should be given to the opinion of a

20 treating source than to the opinion of doctors who do not treat the

21 claimant."  Lester, 81 F.3d at 830 (citing Winans v. Bowen, 853 F.2d

22 643, 647 (9th Cir. 1987)).  "At least where the treating doctor's

23 opinion is not contradicted by another doctor, it may be rejected

24 only for 'clear and convincing' reasons."  Id. (citing Baxter v.

25 Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)).  "Even if the

26 treating doctor's opinion is contradicted by another doctor, the

7

1  Commissioner may not reject this opinion without providing 'specific

2  and legitimate reasons' supported by substantial evidence in the

3  record for so doing." Id. (citing Murray v. Heckler, 722 F.2d 499,

4  502 (9th Cir. 1983)).

5       With respect to plaintiff's physical abilities, Dr. Chen

6  opined in a letter that plaintiff "is disabled and unable to work."

7  (Tr. at 297.)  Dr. Padilla similarly opined in a letter that

8  plaintiff was "completely disabled" due to her chronic pain and in

9  another letter indicates that she was precluded "from working in

10  nearly any capacity."  (Tr. at 307-08.)[2]  There is no opinion in the

11  record indicating that plaintiff is capable of performing the

12  physical demands of light work.

13       Nonetheless, the ALJ rejected the uncontradicted opinions

14  of plaintiff's treating physicians.  In this regard, the ALJ

15  explained that the ALJ, not plaintiff's treating physicians, is

16  charged with determining whether a claimant is disabled.  (Tr. at

17  25.)  While the court agrees with the ALJ regarding his role in the

18  administrative proceedings, a treating physician's opinion as to

19  disability is evidence to be considered properly -- not summarily

20  rejected because it addresses the disability issue -- when the ALJ

21  answers the question of whether the claimant is disabled.  See

22  Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)("The

23  administrative law judge is not bound by the uncontroverted opinions

24

─────────────────

25       [2]  Dr. Padilla also filled out a social security form, checking
   boxes suggesting that plaintiff may be able to perform some types of
26  sedentary work.  (Tr. at 301-02.)

8

1   of the claimant's physicians on the ultimate issue of disability, but

2   he cannot reject them without presenting clear and convincing reasons

3   for doing so.").

4        The ALJ also reasoned that the opinions of Dr. Chen and Dr.

5   Padilla were too "general" and unsupported by treatment notes and any

6   other evidence in the record.  (Tr. at 25-26.)  However, while

7   certain documents in the administrative record reflect the treating

8   physicians' general opinion of disability,[3] those documents do not

9   exist in a vacuum.  The opinions of Dr. Chen and Dr. Padilla are

10  informed by numerous treatment and procedure notes that document

11  plaintiff's recurrent intractable epigastric and right upper quadrant

12  abdominal pain radiating through the back.  (Tr. at 200-01, 222, 224,

13  242-43, 244-45, 297, 298-99, 300, 343-44.)

14       Finally, in rejecting the opinions of Dr. Chen and Dr.

15  Padilla, the ALJ also noted recent gaps in plaintiff's treatment and

16  characterized her care as conservative since it largely consisted of

17  medications and injections to control plaintiff's pain.  (Tr. at 26.)

18  However, these facts do not call into question the opinions of Dr.

19  Chen and Dr. Padilla.  Rather, they only highlight the nature of

20  plaintiff's impairment.  Plaintiff suffers from intractable

---

[3] In characterizing the opinions as "general", the ALJ's decision appears to single out Dr. Chen's June 17, 1997, opinion that plaintiff "is disabled and unable to work."  (Tr. at 297.)  While that opinion in and of itself may be properly characterized as somewhat general, it is not without specificity.  Dr. Chen explains in that opinion that plaintiff "suffers from severe debilitating attacks of abdominal pain, nausea and vomiting.  Despite extensive workup and treatment, we have not been able to cure or effectively manage her condition. ... At this time ... she continues to suffer significant symptoms and is disabled and unable to work."  (Id.)

debilitating right upper quadrant pain of an unknown etiology. According to both Dr. Chen and Dr. Padilla, she has undergone an extensive work-up and numerous treatment modalities with very limited success.  (Tr. at 297, 300, 307.)  Thus, plaintiff presently is maintained on medication -- again, with limited success -- which require periodic management.  Indeed, if plaintiff were to seek more aggressive therapy on a more regular basis, it is not at all clear what that treatment would consist of, Dr. Chen and Dr. Padilla apparently having exhausted all other avenues of treatment.

Accordingly, the court finds that the ALJ failed to articulate clear and convincing reasons based upon substantial evidence in the record for rejecting the uncontradicted opinions of Dr. Chen and Dr. Padilla regarding plaintiff's physical abilities to perform work.  Reversal is therefore required.

Reversal is also required due to the ALJ's treatment of the various medical opinions in the record addressing plaintiff's mental abilities to perform work.  With respect to plaintiff's mental abilities the ALJ found plaintiff capable of performing unskilled work.  Unskilled work is defined as work which "needs little or no judgment to do simple duties that can be learned on the job in a short period of time....  [L]ittle specific vocational preparation and judgment are needed."  20 C.F.R. §§ 404.1568(a), 416.968(a).  In addition, "the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people) ...."  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.00(g).  See also Social Security Ruling No. 85-15, 1985 WL 56857, at *4 ("The basic mental

Case 2:04-cv-00785-DAD   Document 18   Filed 09/15/05   Page 11 of 17

demands of competitive, remunerative, unskilled work include the
abilities (on a sustained basis) to understand, carry out, and
remember simple instructions; to respond appropriately to
supervision, coworkers, and usual work situations; and to deal with
changes in a routine work setting.").

         Substantial evidence does not support the ALJ's finding
that plaintiff is capable of even the mild demands of unskilled work.
On the contrary, nearly every medical opinion in the record
addressing plaintiff's mental health contains evidence of significant
nonexertional impairments that preclude even unskilled work.  More
specifically, while examining physician Kourosh Lashai, M.D. found
plaintiff only mildly impaired in many areas, Dr. Lashai found
plaintiff's ability to deal with day to day stressors to be
"moderate[ly] to significantly impaired."  (Tr. at 252.)  Examining
physician Janice Y. Nakagawa, Ph.D. found plaintiff to be
"experiencing a great deal of emotional pressure.  She is unable to
cope with even the most mild of stressors....  [H]er depression,
anxiety, and turmoil become so great that her ability to think in a
cogent, well-reasoned fashion is seriously compromised."  (Tr. at
321.)  While examining physician Gagan Dhaliwal, M.D. found plaintiff
mildly impaired in many areas, Dr. Dhaliwal found plaintiff's
abilities to relate to co-workers and supervisors, be attentive and
concentrate to be "mildly to moderately impaired."  (Tr. at 329.)
Examining physician Michael Joyce, M.D. found that "this claimant
would clearly have difficulty completing a work day and work week
without interruption from her prescription narcotic dependence....

11

[T]his claimant would have difficulty consistently of responding

appropriately to supervision, coworkers, or the usual work situation

including changes in a routine setting." (Tr. at 349.) Dr. Joyce's

prognosis was "very guarded." (Id.) Even one of the nonexamining

state agency physicians found plaintiff to be "markedly" impaired

with respect to her abilities to maintain attention and concentration

for extended periods; perform activities within a schedule, maintain

attendance, and be punctual within customary tolerances; and compete

a normal workday and workweek without interruptions. (Tr. at 359-

60.)

The only medical opinion that is entirely consistent with

the finding that plaintiff is capable of meeting the mental demands

of unskilled work is the opinion of the other nonexamining physician,

Scott Rose, M.D. (Tr. at 284-94.) That opinion is extremely

conclusory in nature and, when considered in the context of the

record as a whole, amounts to only a scintilla a evidence. Tackett,

180 F.3d at 1098 ("Substantial evidence is defined as 'more than a

mere scintilla but less than a preponderance.'"). See also Bergfeld

v. Barnhart, 361 F. Supp. 2d 1102, 1113 (D. Ariz. 2005)(citing cases

in support of proposition that ALJ may not pick and choose evidence

which supports a particular conclusion).

For all of these reasons, the court finds that the ALJ's

residual functional capacity assessment is not supported by

substantial evidence in the record.

Turning next to plaintiff's credibility argument, it is

well-established that the determination of credibility is a function

12

of the ALJ, acting on behalf of the Commissioner.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995).  An ALJ's assessment of credibility should, in general, be given great weight.  Nyman v. Heckler, 779 F.2d 528, 530-31 (9th Cir. 1985).  Thus, questions of credibility and resolution of conflicts in the testimony are functions solely of the Commissioner.  Morgan, 169 F.3d at 599.  In evaluating a claimant's subjective testimony regarding pain and severity of his or her symptoms an ALJ may consider the presence or absence of supporting objective medical evidence along with other factors.  See Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991); see also Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). Ordinary techniques of credibility evaluation may be employed, and the adjudicator may take into account prior inconsistent statements or a lack of candor by the witness.  See Fair, 885 F.2d at 604 n.5.

Nonetheless, an ALJ's rejection of a claimant's testimony must be supported by specific findings.  Morgan, 169 F.3d at 599; Matthews v. Shalala, 10 F.3d 678, 679 (9th Cir. 1993)(citing Miller, 770 F.2d at 848).  Once a claimant has presented evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of his or her symptoms merely because the testimony is unsupported by objective medical evidence.  Reddick, 157 F.3d at 722; Light v. Chater, 119 F.3d 789, 792 (9th Cir. 1997). Rather, "the ALJ can reject the claimant's testimony about the severity of [his or] her symptoms only by offering specific, clear and convincing reasons for doing so."  Light, 119 F.3d at 792.  See also Reddick, 157 F.3d at 722.

1    Here, the ALJ found plaintiff's testimony to be less than

2    credible since "[a]fter some surgery in 1994 through 1996, the

3    clinical findings have been essentially normal." (Tr. at 26.)  Such

4    a generalization of the record is not supported by substantial

5    evidence.  As of March 11, 1997, plaintiff's abdominal pain was

6    reproduceable upon clinical examination.  With respect to plaintiff's

7    abdomen, gastroenterologist Burton P. Goldfine, M.D. observed at that

8    time:  "Very light pressure here reproduces her pain.  It makes her

9    nauseated."  (Tr. at 275.)  Dr. Goldfine opined that "at least one

10   major component of her pain ... is emanating from her abdominal wall,

11   either in the incision with neuromatous growth or with something

12   adherent to the incision within the peritoneal cavity."  (Tr. at

13   276.)  He observed that laboratory tests showed an "elevation of

14   liver enzymes with her acute episode of pain ...."  (Id.)  Based on

15   his treatment and examinations of plaintiff, Dr. Padilla similarly

16   opined in 1998 and 1999 that plaintiff's pain stemmed from her

17   history of abdominal surgeries.  (Tr. at 307, 325.)

18   In rejecting plaintiff's testimony the ALJ also reasoned

19   that plaintiff had "received virtually no treatment other than pain

20   medication or injections.  Although this could be consistent with

21   pain of unknown origin, it can as easily be consistent with her past

22   drug abuse disorder and drug seeking tendencies."  (Tr. at 26.)  The

23   ALJ's innuendo is not supported by substantial evidence.  As stated

24   above, plaintiff's use of prescription medication only highlights the

25   nature of plaintiff's intractable debilitating right upper quadrant

26   pain of an unknown etiology.  Further, while plaintiff may have

14

1   become dependent upon medication, it must be noted that those

2   medications have been prescribed to her in an effort to alleviate her

3   pain.  Physicians have noted this point while also noting that any

4   polysubstance abuse on the part of plaintiff is in remission.  (Tr.

5   at 321, 328, 348, 351, 356.)

6          The ALJ also characterized plaintiff's activities of daily

7   living as "generally consistent with light work and light

8   activities."  (Tr. at 27.)  However, the ALJ cited to no specific

9   evidence in support of this conclusion.  Further, plaintiff's

10  testimony at the three administrative hearings and the written

11  statements of plaintiff and her husband simply do not support a

12  finding that she is capable of light work.  (Tr. at 160-77, 378, 380-

13  81, 396-400, 422-23.)  Plaintiff's statements that she is capable of

14  "walking very slowly," attempting "light cleaning" and preparing

15  cereal for breakfast and a salad for lunch do not amount to

16  substantial evidence in support of the assertion that she is capable

17  of light work.  (Tr. at 160-61, 170)

18         Finally, in resolving the credibility issue the ALJ

19  observed that plaintiff's weight has been stable; there has been no

20  evidence of muscle atrophy; and plaintiff has remained well-groomed

21  despite her claims of debilitating pain.  These observations

22  regarding plaintiff's personal appearance are supported by the

23  record.  However, taken alone they do not amount to clear and

24  convincing reasons for rejecting plaintiff's subjective complaints as

25  lacking credibility.

26  /////

1   For all of these reasons, the court finds that the ALJ

2   failed to offer specific, clear and convincing reasons for not fully

3   crediting plaintiff's testimony.

4   In light of the errors identified above, it is unnecessary

5   to address the remainder of plaintiff's arguments.  However, the

6   appropriate remedy must be determined.  The decision whether to

7   remand a case for additional evidence or to simply award benefits is

8   within the discretion of the court.  Ghokassian v. Shalala, 41 F.3d

9   1300, 1304 (9th Cir. 1994); Pitzer v. Sullivan, 908 F.2d 502, 506

10  (9th Cir. 1990).  In this regard, the Ninth Circuit has stated:

11  "[g]enerally, we direct the award of benefits in cases where no

12  useful purpose would be served by further administrative proceedings,

13  or where the record has been thoroughly developed."  Ghokassian, 41

14  F.3d at 1304 (quoting Varney v. Sec'y of Health & Hum. Servs., 859

15  F.2d 1396, 1399 (9th Cir. 1988)).  This rule recognizes the

16  importance of expediting disability claims.  Holohan v. Massanari,

17  246 F.3d 1195, 1210 (9th Cir. 2001); Ghokassian, 41 F.3d at 1304;

18  Varney, 859 F.2d at 1401.  Where, as here, there were no legitimate

19  reasons given for disregarding the treating physicians' opinions or

20  plaintiff's testimony, there is no need to remand the case for

21  additional findings.  See Moore v. Commissioner, 278 F.3d 920, 925

22  (9th Cir. 2002) (remanding for payment of benefits where the ALJ

23  "improperly rejected testimony [plaintiff's] three examining

24  physicians"); Holohan, 246 F.3d at 1211; Ghokassian, 41 F.3d at 1304

25  (awarding benefits where the ALJ "improperly discounted the opinion

26  /////

16

of the treating physician"); <u>Pitzer</u>, 908 F.2d at 506; <u>Winans</u>, 853 F.2d at 647.

If the opinion of plaintiff's treating physicians and plaintiff's own testimony are properly credited, the evidence indicates that plaintiff is unemployable and disabled.  Plaintiff filed her application nine years ago.  No useful purpose would be served by delaying this matter further for additional administrative proceedings.  Therefore, this matter will be remanded with the direction to grant benefits.

**CONCLUSION**

Accordingly, IT IS HEREBY ORDERED that:

1.   Plaintiff's motion for summary judgment is granted;

2.   Defendant's cross-motion for summary judgment is denied; and

3.   The decision of the Commissioner of Social Security is reversed and this case is remanded with the direction to grant benefits.

DATED: September 14, 2005.

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:th
ddad1\orders.socsec\boswell0785.order

17